NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| MILLER YACHT SALES, INC., | : | Civil No. 02-0402  (AET) |
|  | : |  |
| Plaintiff, | : | **MEMORANDUM & ORDER** |
|  | : |  |
| v. | : |  |
|  | : |  |
| STEVEN SMITH; MARINER YACHT SALES, INC.; IVAN BOGACHOFF; ISLAND YACHT BROKERS; FIRST WORLD YACHTS, INC.; MARINER YACHTS INTERNATIONAL; ABC CORPS. 1-10; and JOHN DOES 1-10, | : |  |
|  | : |  |
| Defendants. | : |  |

THOMPSON, U.S.D.J.

I.   Introduction

This matter comes before the Court on a motion for partial summary judgment by Defendants Stephen Smith (pled as "Steven Smith"), Mariner Yachts, Inc. (pled as "Mariner Yacht Sales, Inc."),[1] First World Yachts, Ltd., and Island Yacht Brokers (collectively, the "Island Defendants").[2]  The Court has decided this motion after considering the parties' written submissions.  Pursuant to Fed. R. Civ. P. 78, no oral argument was held.  For the reasons stated

---

[1]  (Island Defs.' Answer to Amended Complaint ¶ 9.)

[2]  Counsel for the Island Defendants has also entered an appearance for Defendant Mariner Yachts International, but has indicated that Mariner Yachts International is not an entity, but instead is a brand name for certain boats.  (Island Defs.' L. Civ. R. 56.1 Statement of Facts at 2 n.2; Island Defs.' Answer to Amended Complaint ¶ 24.)

below, the Island Defendants' motion is granted in part and denied in part.

II.     Background

Plaintiff filed its Amended Complaint on July 22, 2005 against the Island Defendants and Defendant Ivan Bogachoff, alleging claims of (1) trade dress infringement under 15 U.S.C. § 1125; (2) unfair competition under 15 U.S.C. § 1125; (3) unfair competition under the New Jersey Unfair Competition Act (the "NJ UCA"), N.J.S.A. § 56:4-1, by deceptive trade practices and unfair dealing; (4) unfair competition under the NJ UCA by unprivileged imitation; (5) unfair competition under common law; (6) copyright infringement; and (7) tortious interference with a prospective economic advantage.

Plaintiff is a New Jersey corporation that designs, builds, markets, imports and sells Marine Trader yachts, including 34-foot, 38-foot, and 40-foot Marine Trader Double Cabin and Sedan yachts. Plaintiff had agreements with certain Asian companies to build and import yachts to the United States. In particular, Plaintiff had long-standing business relationships in this regard with Chung Hwa Boat Building Co., Ltd. ("Chung Hwa"), a Taiwanese company, and Ningbo Fuhai Glassfibre Reinforced Plastic Boat Manufacturing Co., Ltd. ("Ningbo Fuhai"), a Chinese company (collectively, the "Asian boat manufacturers").[3]

At some point in time, Defendant Smith met with Plaintiff because he was interested in becoming a distributor of Marine Trader yachts. Defendant Bogachoff was to act as Defendant Smith's partner in this regard. In 1999, Plaintiff sent Defendant Smith to accompany one of its employees to the Ningbo Fuhai plant in China to inspect one of Plaintiff's yachts. During this

---

[3] Both parties repeatedly refer to these companies as "the Chinese" throughout their papers. For clarity, the Court suggests that the parties use a more descriptive phrase such as "the Asian boat manufacturers," or refer to the individual companies by name.

visit, Defendant Smith met Ernest Lee, who apparently is the head of Chung Hwa.  About a year later, Defendant Smith went on a second trip to China with Defendant Bogachoff to conduct a port investigation for Bank of America.  During this second trip, Defendant Smith began negotiating an agreement with Ernest Lee to build yachts.  Thereafter, Defendant Smith, along with the other Defendants, began selling yachts in the United States under various brand names, including the Orient Trader brand name.

Plaintiff alleges that the yachts sold by Defendants are identical to its 34-foot, 38-foot, and 40-foot Marine Trader yachts, and that Defendants' yachts are built using Plaintiff's molds and designs for the Marine Trader yachts.  Plaintiff further alleges that photographs and drawings of Plaintiff's yachts in advertisements and brochures have been used in Defendants' marketing materials.  Plaintiff also alleges that Defendants unlawfully interfered in its exclusive business relationships with the Asian boat manufacturers by entering into an agreement with them to build yachts using Plaintiff's designs and molds.

III.   Discussion

The Island Defendants seek summary judgment on Plaintiff's claims of tortious interference (Count VII), trade dress infringement (Count I), and unfair competition (Counts II through V), as well as on Plaintiff's claims for attorneys' fees and damages based on copyright infringement (Count VI).

A.   Standard for Summary Judgment

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Kreschollek v. S. Stevedoring Co.,

223 F.3d 202, 204 (3d Cir. 2000). In deciding whether summary judgment should be granted, the Court considers "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," Fed. R. Civ. P. 56(c), and construes all facts and inferences in the light most favorable to the nonmoving party. Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002). The Court's function "at the summary judgment stage . . . is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323; Padillas v. Stork-Gamco, Inc., 186 F.3d 412, 414 (3d Cir. 1999). If the nonmoving party would bear the burden of persuasion at trial, the moving party may discharge this prima facie burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. The burden then shifts to the nonmoving party "to make a showing sufficient to establish the existence of an element essential to that party's case." Padillas, 186 F.3d at 414 (quoting Celotex, 477 U.S. at 322). To successfully defend against a motion for summary judgment, a plaintiff cannot merely rely on the unsupported allegations of the complaint, and must present more than the "mere existence of a scintilla of evidence" in his favor. Anderson, 477 U.S. at 252. Only evidence that would be admissible at trial will be considered. Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 387 n.13 (3d Cir. 1999).

    B.    <u>Tortious Interference with a Prospective Economic Advantage</u>

Under New Jersey law, a plaintiff alleging tortious interference with a prospective business relationship must show:

> (1) a plaintiff's reasonable expectation of economic benefit or advantage, (2) the defendant's knowledge of that expectancy, (3) the defendant's wrongful, intentional interference with that expectancy, (4) in the absence of interference, the reasonable probability that the plaintiff would have received the anticipated economic benefit, and (5) damages resulting from the defendant's interference.

Fineman v. Armstrong World Indus., Inc., 980 F.2d 171, 186 (3d Cir. 1992) (citing Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 751 (1989) and Restatement (Second) of Torts § 766B).

Plaintiff has submitted evidence that it had a continuing business relationship with the Asian boat manufacturers during the relevant time period. (See Certification of Donald Miller [hereinafter "Miller Cert."], Exs. D & E.) Although this evidence consists of a fax order from Plaintiff to Chien Hwa Boat, and an invoice between Plaintiff and Oriental China Investment, Ltd., a reasonable jury could infer from other evidence submitted that these companies worked with the Asian boat manufacturers to build Plaintiff's boats. (See Certification of Chryssa Yaccarino [hereinafter "Yaccarino Cert."], Ex. D; Certification of Mitchell W. Taraschi [hereinafter "Taraschi Cert."], Ex. H.) Plaintiff has also submitted evidence to dispute the Island Defendants' contention that they had no knowledge that Plaintiff had an expectancy of economic benefit or advantage because they thought that the Asian boat manufacturers owned the boat designs and were seeking a new distributor. (See Yaccarino Cert., Exs. C & E.) In addition, there is a genuine factual dispute regarding whether Plaintiff has suffered damages due to the Island Defendants' behavior. (See Taraschi Cert., Ex. G; Miller Cert. ¶ 12.)

The Court rejects the Island Defendants' judicial estoppel argument. Judicial estoppel can be applied when a party asserts a certain position in a legal proceeding and prevails, only to

assert a contrary position later on because of changed interests.  See New Hampshire v. Maine, 532 U.S. 742, 749-51 (2001).  Although Plaintiff may have alleged that the Asian boat manufacturers initiated a business relationship with Defendants in another case, it did not ultimately prevail on that position because the case was dismissed.  (See Pl.'s Br. in Opp. at 12.)  The parties' submissions in the present motion indicate that there is a disputed issue of material fact as to whether the Asian boat manufacturers initiated the relationship with Defendants, or vice versa.  (See Yaccarino Cert., Ex. C; Taraschi Cert., Ex. M.)  Therefore, the Court will not grant summary judgment on Count VII.

      C.      Unfair Competition and Trade Dress Infringement

For a claim of unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), a plaintiff must show that a defendant's use in commerce of "any word, term, name, symbol, or device . . . or any false designation of origin. . . is likely to cause confusion, or to cause mistake, or to deceive as to . . . the origin, sponsorship, or approval of [his or her] goods, services, or commercial activities . . . ."  15 U.S.C. § 1125(a)(1); see also A & H Sportswear Inc. v. Victoria's Secret Stores, Inc., 166 F.3d 197, 202 (3d Cir. 1999).  This provision protects trade dress under the "symbol" or "device" language of § 43(a).  Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 209 (2000).  Although the concept of trade dress once only referred to the packaging or dressing of a product, it has now been expanded to encompass product design. Id.

To establish a claim of trade dress infringement for an unregistered product design, a plaintiff must show that (1) the infringed feature is not functional, (2) the feature is distinctive because it has acquired secondary meaning, and (3) likelihood of confusion.  Shire US Inc. v.

Barr Labs. Inc., 329 F.3d 348, 353 (3d Cir. 2003); see also Wal-Mart, 529 U.S. at 212 (holding that a product design can be distinctive only upon a showing of secondary meaning).  There are two tests for functionality.  A product feature is functional (1) "if it is essential to the use or purpose of the article or if it affects the cost or quality of the article" or (2) if its "exclusive use . . . would put competitors at a significant non-reputation-related disadvantage."  Shire US Inc., 329 F.3d at 353-54.  A product feature has achieved distinctiveness through secondary meaning "when, 'in the minds of the public, the primary significance of a [feature] is to identify the source of the product rather than the product itself.'"  Wal-Mart, 529 U.S. at 211.  To satisfy the traditional test for likelihood of confusion in the trade dress context, a plaintiff must "show[] that an appreciable number of ordinarily prudent consumers of the type of product in question are likely to be confused as to the source of the goods."  Versa Prods. Co., Inc. v. Bifold Co. (Mfg.) Ltd., 50 F.3d 189, 200 (3d Cir. 1995).

The Third Circuit has recognized the difficulty of trade dress claims involving product configurations, as compared to trademark claims, stemming from the reality that a product's design is usually not indicative of its source.  See Duraco Prods., Inc. v. Joy Plastic Enters., Ltd., 40 F.3d 1431, 1440-41 (3d. Cir. 1994).  In addition, "[t]rade dress protection . . . is not intended to create patent-like rights in innovative aspects of product design."  Shire US Inc., 329 F.3d at 353.  Rather, the protection "extends only to incidental, arbitrary or ornamental product features which identify the product's source."  Id.

The Court finds that Plaintiff has made a sufficient showing of its trade dress and unfair competition claims to raise issues of material fact for trial.  Plaintiff has pointed out the following features in its designs which it alleges gives its yachts a total appearance that is non-

functional:

> simulated plank seams in hull; curve and flare of bow section; style of sliding door; scupper drain type; exterior teak trim style; sheer line of hull; cabin proportion to hull; flybridge shape and design; cap rail style and shape; window style, shape and proportion; swim platform style; bow pulpit; Samson post; hawse cleat style; teak deck curve and style; decorative mast and rigging; handrails and hardware style; teak grade design of cabinetry; cabin style parquet teak floors and holly strip; roll-out bar design and location; pilot seat design; dinette shape and style; galley cabinetry style; electrical panel style; interior teak trim and pinrails; carving and shape of interior doors; tub/shower style; instrument cluster style and location; knees and overhead trim; and forward head sink arrangement.

(Pl.'s Br. in Opp. at 20.)  These are stylistic, decorative features that are not essential to the function of a yacht, and which a jury could conclude contributes to a distinctive look for the Marine Trader yachts.  (See Taraschi Cert., Ex. K.)

This conclusion is further supported by Plaintiff's evidence that customers associated a certain design with the Marine Trader brand name.  (See Yaccarino Cert., Exs. F & G.)  Specifically, a salesman working with Defendants testified at deposition that customers often asked him whether the Marine Trader and Orient Trader yachts were related.  (See Yaccarino Cert., Ex. F.)  In addition, Plaintiff has submitted certifications from people who worked in the boat industry or who were current customers to show that they associated a certain design with the Marine Trader name.  (See Certification of Craig Smith; Certification of Millard Pierce; Certification of Henry W. Steel.)  This evidence provides sufficient secondary meaning for Plaintiff to raise a genuine issue of material fact as to whether the Marine Trader designs are distinctive.  See Duraco Prods., 40 F.3d at 1444.

Plaintiff has also submitted certifications of prospective customers who state that they

were confused by the "identical" look of Defendants' yachts to Plaintiff's Marine Trader yachts. (See Certification of Richard Shore; Certification of Craig Smith.)  Based on these certifications and the evidence discussed above, the Court finds that Plaintiff has raised an issue of material fact with regard to likelihood of confusion.  See Versa Prods., 50 F.3d at 202.  Therefore, the Court will not grant summary judgment to the Island Defendants on Counts I and II of the Plaintiff's Amended Complaint.  The Court notes that because Counts III through V involve a similar analysis, it will not grant summary judgment on those counts either.

        D.        Attorneys' Fees and Statutory Damages Under Count VI

In Count VI[4] of its Amended Complaint, Plaintiff alleges that Defendants published brochures and advertisements using Plaintiff's photographs, specifications, and drawings of its 34-foot, 38-foot, and 40-foot Marine Trader yachts.  Plaintiff's brochures and advertising materials were registered with the Copyright Office in December 2003.  Plaintiff alleged this same copyright infringement claim in its original Complaint, which was filed in January 2002.  The Island Defendants do not seek summary judgment on the copyright infringement claim, but rather seek summary judgment on Plaintiff's claims for attorneys' fees and damages based on copyright infringement.

Pursuant to 17 U.S.C. § 412, "no award of statutory damages or of attorney's fees . . . shall be made for . . . any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work."  17 U.S.C. § 412(2).  Infringement commences

---

[4] Plaintiff mistakenly labeled two of its Counts as "Count Four" in its Amended Complaint.  As a result, the Court will refer to "Count Five" as Count VI and "Count Six" as Count VII.

"when the first act in a series of acts constituting continuing infringement occurs." <u>Greenfield v. Twin Vision Graphics, Inc.</u>, 268 F. Supp. 2d 358, 385 (D.N.J. 2003). Because Plaintiff alleged acts of infringement in January 2002, the first act of infringement would have had to occur, at the latest, more than a year before Plaintiff's brochures and advertising materials were registered in December 2003. Therefore, the Court grants summary judgment to the Island Defendants on the issue of statutory damages and attorneys' fees under Count VI.

      E.      <u>Actual Damages and Lost Profits Under Count VI</u>

Rather than seeking statutory damages for copyright infringement, a copyright owner may instead seek to recover "the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b). To establish the infringer's profits, the copyright owner "is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." <u>Id.</u>

The Island Defendants argue that Plaintiff should be barred from seeking copyright infringement damages under 17 U.S.C. § 504(b) because (1) there is no causal connection between the Island Defendants' profits and the infringement, and (2) there is no evidence that Plaintiff would have sold as many boats as the Island Defendants. Pursuant to § 504(b), Plaintiff must present proof of the Island Defendants' gross revenue to establish lost profits. Plaintiff has not indicated that it submitted evidence in fulfillment of this requirement. As a result, the Court grants summary judgment to the Island Defendants on the lost profits issue. However, the Court finds that there is enough evidence at this stage to create a disputed issue of material fact with

regard to the actual damages issue.  (See Taraschi Cert., Ex. G.)

      F.      Derivative Work Under Count VI

A "derivative work" is defined as "a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted."  17 U.S.C. § 101.  Plaintiff claims that Defendants' yachts are "derivative works of the design . . . in violation of plaintiff's post December 2003 copyrights."  (Pl.'s Br. in Opp. at 24.)  However, Plaintiff alleges in the other Counts of its Amended Complaint that Defendants used its designs to make identical copies of its yachts.  Because a derivative work must be transformative in nature and not merely a copy, Defendants' yachts do not qualify as derivative works.  Although the building of Defendants' yachts from Plaintiff's designs could constitute copyright infringement of the designs, Plaintiff does not allege this, and has not made a showing that its designs were registered with the Copyright Office.  See 17 U.S.C. § 1301; Great S. Homes, Inc. v. Johnson & Thompson Realtors, 797 F. Supp. 609 (M.D. Tenn. 1992).  As a result, the Court grants summary judgment to the Island Defendants on Plaintiff's claim that Defendants' yachts are "derivative works."

IV.    Conclusion

For the foregoing reasons, and for good cause shown,

It is on this 6th day of September, 2006,

ORDERED that the Island Defendants' motion for partial summary judgment [79] is GRANTED IN PART AND DENIED IN PART; and it is further

ORDERED that summary judgment is granted to the Island Defendants on Plaintiff's

claims for statutory damages, attorneys' fees, and lost profits based on copyright infringement; and it is further

ORDERED that summary judgment is granted to the Island Defendants on Plaintiff's claim that Defendants' yachts are derivative works under Plaintiff's claim of copyright infringement.

                                                   s/ Anne E. Thompson
                                                  ANNE E. THOMPSON, U.S.D.J.